IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALFWEAR, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MAST-JÄGERMEISTER US, INC.<br><br>Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br>Case No. 2:12-cv-00936-TC-DBP<br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Plaintiff Alfwear, Inc. (Alfwear) brought this suit against Defendant Mast-Jägermeister US, Inc. (Mast-Jägermeister) for federal trademark infringement, dilution, and unfair competition under federal and common law. Alfwear owns the trademark "KÜHL," which it uses in connection with its outdoor clothing brand. Mast-Jägermeister uses the word KÜHL in advertisements for its German liqueur.

Factual discovery is now complete, and Mast-Jägermeister moves the court for summary judgment on all four of Alfwear's claims. (ECF No. 127). For the following reasons, Mast-Jägermeister's motion for summary judgment is GRANTED.

**FACTUAL BACKGROUND**

The factual background is set forth at length in the parties' motions. <u>See</u> Def.'s Mot. to Dismiss (ECF No. 127); Pl.'s Opp'n Br. (ECF No. 170); Def.'s Reply Br. (ECF No. 214). The court repeats only those facts necessary to explain its decision. In light of the legal standard that governs summary judgment, the facts described below are either undisputed or based on

1

evidence submitted as summary judgment exhibits and viewed in a light most favorable to the nonmoving party, Alfwear.

Alfwear is a Utah-based clothing company that manufactures and sells rugged outdoor apparel, such as fleece jackets and hiking pants. Alfwear sells clothes on its website and to retailers like REI and smaller outdoor gear shops. Alfwear owns the federally registered trademark KÜHL,[1] which is the name of its clothing brand. It also uses KÜHL in connection with the sale of bottled water, wax, lip balm, mints, and posters. Alfwear's mark KÜHL is depicted on its website as follows:



Pl.'s Opp'n App. ("Opp'n App.") Ex. 5 (ECF No. 171-3).

Additionally, Alfwear acquired by assignment a federal trademark registration for KÜHL for use in connection with wine.[2] Opp'n App. Ex. 58 (ECF No. 171-25). It has an active federal trademark application for KÜHL for use in connection with beer.[3] Opp'n App. Ex. 43 (ECF No.

---

[1] U.S. Patent and Trademark Office (USPTO) Reg. Nos. 1,990,375 (for rugged outdoor clothing); 3,916,866 (for belts, bottoms, hats, jackets, pants, shirts, shorts, tops); and 4,441,177 (for lip balm and bottled water).
[2] Reg. No. 92,075,170.
[3] Serial No. 88463568.

171-16). But to date, Alfwear has not actually used KÜHL in connection with any alcoholic beverages. Def.'s App. Ex. 4 (Fay Dep.) at 116:22–117:1124 (ECF No. 127-12).

Mast-Jägermeister is the United States distributor of Jägermeister, a German herbal liqueur. Mast-Jägermeister sells its product to liquor distributors, that then sell it to liquor stores, bars, and restaurants where consumers purchase it.

In 2016, Mast-Jägermeister launched a rebranding campaign to reposition its brand from one associated with "pukey frat guys" and "college spring break parties" to something more sophisticated. Opp'n Br. at 19. As part of this marketing campaign, Mast-Jägermeister used the word KÜHL on billboards, in commercials, and as part of digital advertisements on the internet and social media.

 

Opp'n App. Ex. 30 at 1 (ECF No. 171-5); Ex. 31 at JAG000019 (ECF No. 171-6).

Most of Mast-Jägermeister's advertisements feature phrases like "DRINK IT ICE KÜHL, -18°C TO BE PRECISE," "ICE KÜHL," or "RUN TO A KÜHL SPOT." See Opp'n App. Ex. 30; 31. But a few advertisements use the word KÜHL alone. Opp'n Br. at 33; Opp'n App. Ex. 31 at JAG000052.

Although Alfwear's founder and Mast-Jägermeister's president met in person to try to resolve their trademark infringement concerns, they were unable to reach an agreement. See

Opp'n App. Ex. 1 (Boyle Dep.) at 102:15–106:11 (ECF No. 174-1). Alfwear filed this lawsuit against Mast-Jägermeister on August 17, 2017. Compl. (ECF No. 2).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (internal quotation omitted). Should the nonmovant bear the burden of persuasion at trial, "[t]hese facts must establish, at a minimum, an inference of the presence of each element essential to the case." Id. (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this is only true insofar as "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)).

## ANALYSIS

**I.  Trademark Infringement**

In moving for summary judgment on Alfwear's federal trademark infringement claim under 15 U.S.C. § 1114(1), Mast-Jägermeister makes two principal arguments. First, Mast-Jägermeister invokes 15 U.S.C. § 1115(b)(4)'s fair use defense, explaining that it does not employ KÜHL as a trademark or source identifier. Instead, it uses KÜHL to merely describe the proper temperature of its liqueur. Second, Mast-Jägermeister maintains that no reasonable juror could find a likelihood of confusion between the parties' marks.

For the reasons set forth below, the court agrees with Mast-Jägermeister that there is no likelihood of confusion. Because likelihood of confusion is required for Alfwear to prevail on its trademark infringement claim, its absence stops this case from continuing to trial regardless of whether Mast-Jägermeister can also assert a fair use defense.

A trademark is "any word, name, symbol, or device, or any combination thereof ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To prevail on a trademark infringement claim, a plaintiff must establish that (1) it has a legal right to a mark and (2) that the defendant's use of a similar mark is likely to generate consumer confusion in the marketplace.[4] See Affliction Holdings, LLC v. Utah Vap or Smoke, LLC, 935 F.3d 1112, 1114 (10th Cir. 2019).

In the Tenth Circuit, "likelihood of confusion is a question of fact [ ] amenable to summary judgment." Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 972 (10th Cir. 2002). Summary judgment will be granted if "no reasonable juror could find likelihood of confusion

---

[4] The parties do not dispute that Alfwear has a legal right to use the mark KÜHL, as Alfwear's federal registrations demonstrate that KÜHL is valid and protectable. See Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 924 (10th Cir. 1986).

between plaintiff's and defendants' marks." King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1093 (10th Cir. 1999).

In assessing whether there is a likelihood of confusion, the court considers the following, non-exhaustive list of factors:

(1) the degree of similarity between the marks;

(2) the intent of the alleged infringer in adopting its mark;

(3) evidence of actual confusion;

(4) similarity of products and manner of marketing;

(5) the degree of care likely to be exercised by purchasers; and

(6) the strength or weakness of the marks.

Sally Beauty Co., 304 F.3d at 972. Even though these factors are interrelated and no individual factor is dispositive, the degree of similarity is the most important factor. Id.; see also Team Tires Plus, Ltd. v. Tires Plus, Inc., 394 F.3d 831, 833 (10th Cir. 2005) ("At all times . . . the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks." (internal quotations omitted).

As discussed below, the majority of the factors demonstrate that there is no likelihood of confusion between the parties' use of KÜHL. Although the third factor—actual confusion— weighs slightly in favor of Alfwear, the remaining factors strongly support Mast-Jägermeister.

### 1. The degree of similarity between the marks.

The degree of similarity between the parties' marks is tested on three levels: sight, sound, and meaning. King of the Mountain Sports, Inc., 185 F.3d at 1090. The marks' similarity is not measured in isolation. The court must also consider the "effect on marketplace presentation, including lettering style and logos, the placement of words within the marks, the item on which

the marks were placed, and the meaning of the marks." Affliction Holdings, 935 F.3d at 1115 (internal quotes omitted). "[I]t is axiomatic in trademark law that side-by-side comparison is not the test. The marks must be compared in the light of what occurs in the marketplace, not in the courtroom." Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 941 (10th Cir. 1983) (internal quotes omitted).

Accordingly, "a lower degree of similarity is required when the marks are placed on closely related goods." Affliction Holdings, 935 F.3d at 1114–15. If a consumer encounters two related goods within the same market, that consumer would likely be confused even if the marks were only slightly similar. Nautilus Grp., Inc. v. ICON Health & Fitness, Inc., 372 F.3d 1330, 1345 (Fed. Cir. 2004). "On the other hand, even if two marks are identical, if they are encountered in different contexts, the consumer can often easily distinguish between the two products." Id.

Alfwear argues that Mast-Jägermeister's use of KÜHL is identical to its own. Both marks consist of the word KÜHL in capital letters, with an umlaut, and in a similar font. See Opp'n Br. at 3. But Alfwear's side-by-side comparison of the marks does not reflect the way in which consumers perceive the marks in the real world.

In the marketplace, the parties use KÜHL in different contexts, which significantly diminishes the marks' similarity. Alfwear uses KÜHL as brand name for its clothing line. It uses KÜHL as a stand-alone word that usually accompanies a logo of a stylized mountain peak. See Opp'n App. Ex. 5. On the other hand, Mast-Jägermeister uses KÜHL primarily in expressive phrases, like "DRINK IT ICE KÜHL." See Opp'n App. Ex. 31. The vast majority of Mast-Jägermeister's advertisements containing KÜHL also include images of the Jägermeister bottle

or the Jägermeister logo (a deer head in front of a cross and star). See id. When the marks are actually encountered by consumers in the marketplace, there is little similarity:

 

Opp'n App. Ex. 38; Opp'n App. Ex. 31.

Moreover, the parties use KÜHL in connection with goods that are not closely related. Alfwear uses KÜHL as the name of its outdoor clothing line, and its clothing products usually bear the mark on a label or tag. Mast-Jägermeister uses KÜHL to advertise its herbal liqueur. It does not place the word directly on its products. Consequently, consumers can easily distinguish between the two marks. This factor strongly favors Mast-Jägermeister.

### 2. Mast-Jägermeister's intent in adopting the mark.

The focus for this factor "is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." King of the Mountain Sports, 185 F.3d at 1091 (internal quotations omitted). Alfwear argues that Mast-Jägermeister, in an effort to change improve its "pukey frat guy," Jägerbomb-focused[5] image, intentionally chose to use KÜHL with full knowledge of Alfwear's ownership of the mark. See Opp'n Br. at 75.

---

[5] A Jägerbomb is drink made by dropping a shot glass of Jägermeister into an energy drink such as Red Bull. See Collen Graham, Jäger Bomb, The Spruce Eats (Sept. 29, 2020) https://www.thespruceeats.com/jager-bomb-recipe-759713. The 2007 viral YouTube parody

Although it is undisputed that Mast-Jägermeister launched a rebranding campaign for its liqueur, Alfwear cannot demonstrate that Mast-Jägermeister intentionally attempted to trade on Alfwear's reputation in doing so. Mast-Jägermeister learned about Alfwear's registration of KÜHL during its rebranding campaign, but there are no facts showing that Mast-Jägermeister intended to copy Alfwear's mark in improving its own image. Nothing suggests that Mast-Jägermeister engaged in "purposeful manipulation" of its own advertisements to resemble Alfwear's KÜHL mark. Water Pik, Inc. v. Med-Sys., Inc., 726 F.3d 1136, 1158 (10th Cir. 2013) (quoting A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 206 (3d Cir. 2000)).

To the contrary, it appears that Mast-Jägermeister intended to avoid infringement of Alfwear's mark by refraining from using KÜHL on any of its promotional clothing or apparel. See Opp'n App. Ex. 14 (Opperman Dep.) at 111:17–113:4 (ECF No. 174-14). This factor weighs in favor of Mast-Jägermeister.

### 3. Evidence of actual confusion.

Although "a party need not set forth evidence of actual confusion in order to prevail in a trademark-infringement action," Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1135 (10th Cir. 2003), "[a]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." Universal Money Ctrs v. American Tel. & Tel. Co., 22 F.3d 1527, 1534 (10th Cir. 1994). Still, evidence of actual confusion is not necessarily conclusive of a likelihood of confusion. Universal Money Ctrs., 22 F.3d at 1535. "Isolated instances of actual confusion [may]

---

"My New Haircut" portrayed Jägerbombs as a popular beverage choice for "broskis" seeking to get "wasted." See Tolly Taylor, The Biggest Bros in Viral Video History, brobible (Apr. 30, 2014) https://brobible.com/entertainment/article/biggest-bros-viral-videos/.

be de minimis… De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion." Id.

Alfwear presents two types of evidence of actual confusion: anecdotal examples observed by Alfwear's founder and president, Kevin Boyle, and the expert report of Dr. Michael Belch, who conducted a survey to measure customer confusion.

In his deposition, Mr. Boyle stated that on multiple occasions people asked him about "what was going on with KÜHL and Jägermeister." Opp'n App. Ex 1 at 49–52. But most of Mr. Boyle's references to actual confusion are vague and imprecise. [6] At most, his statements show only isolated incidents of actual confusion. This anecdotal evidence is de minimis.

Additionally, Dr. Belch, Alfwear's expert witness, conducted a research study to measure consumers' "net confusion." Opp'n App. Ex. 17 (Belch R.) at 11 (ECF No. 174-17). Study participants were first presented with a screenshot of an Alfwear KÜHL ad on Facebook. Then, the participants were shown one of two Instagram ads—one was a real ad used by Mast-Jägermeister, and the other was a fake ad used as a control. Participants were "asked to answer questions regarding the [Instagram] ads, as each appeared individually side-by-side with the KÜHL Facebook ad." Id. at 5. After analyzing participant's responses, Dr. Belch found that Mast-Jägermeister's "KÜHL AS ICE" and "DRINK IT ICE KÜHL" advertisements resulted in net confusion rates of 30.1% and 35.2%[7] when compared to Alfwear's ad.

---

[6] Mr. Boyle also described a specific instance of confusion, in which Paul Oelerich, a magazine publisher with whom Alfwear has a relationship, expressed confusion about the parties' marks. Opp'n App. Ex 1 (Boyle Dep.) at 48:25–52:17. This is one anecdotal example of confusion, and it not enough to tip the scale in Alfwear's favor. See King of the Mountain Sports, 185 F.3d at 10921 (explaining that seven anecdotal examples of actual confusion did not support a finding of likelihood of confusion).
[7] Confusion was measured by asking the participants whether they thought that the Jägermeister ads featuring the word KÜHL signified that Jägermeister was sponsored by or affiliated with

10

Dr. Belch's report, viewed in a light favorable to Alfwear, does show some evidence of actual confusion. But it does not prove actual confusion in the marketplace. The confusion study presented participants with a side-by-side comparison of the parties' marks in an isolated setting. This is not the way in which courts analyze likelihood of confusion, as explained above. Without any marketplace context, it is likely that Dr. Belch's study participants were more confused by the parties' marks than they would have been in the real world.

Though Dr. Belch's report provides some evidence of actual confusion, it is not enough to overcome all of the other factors which weigh against a likelihood of confusion finding.

### 4. Similarity between the parties' products and manner of marketing.

Generally, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." King of the Mountain Sports, 185 F.3d at 1092. "The possibility of confusion is greatest when products reach the public by the same retail outlets." Beer Nuts, Inc. 711 F.2d at 941 (internal citations omitted).

Here, the parties' products are very distinct: Alfwear sells rugged, outdoor apparel and Mast-Jägermeister sells a German herbal liqueur. Alfwear sells clothing on its website and to retailers like REI; Mast-Jägermeister sells alcohol to liquor stores, bars, and restaurants. Alfwear's brand imagery focuses on people wearing its clothing during outdoor activities in beautiful natural settings, while Mast-Jägermeister presents images of icy bottles, shot glasses, and people drinking at dark bars and parties. See Opp'n App. Exs. 5, 30, 31, 36.

Alfwear points out that both parties use the internet and social media to market their products. But just because both parties advertise online does not mean their digital ads reach the

---

Alfwear. Some participants were also asked whether they thought Mast-Jägermeister had received permission from Alfwear to use the word KÜHL. Opp'n App. Ex 17 (Belch R.) at 8–9.

11

same consumers or even the same demographics. "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1151 (9th Cir. 2011).

Alfwear also notes that Mast-Jägermeister sells clothing on its website. Mast-Jägermeister does sell some promotional apparel, although the word KÜHL is not placed on any clothing. See Opp'n App. Exs. 36, 44. In fact, the word KÜHL is only used once in a description of a hat: "Your drinks are perfekt ice kühl, your head is not. Keep warm, while cooling down with this ribbed beanie hat in green with orange Jägermeister logo tag." Id. Ex. 36 at 1.

Mast-Jägermeister's sale of clothing presents only a "miniscule overlap" between the parties' products. See Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc., 402 F. Supp. 2d 1312, 1330 (D. Kan. 2005) ("[A]lthough the parties' product lines are similar with respect to apparel and collectibles, the significance of that similarity is diminished by the fact that the two companies generally occupy two separate and distinct market niches."). Alfwear and Mast-Jägermeister occupy diverse market niches, and Mast-Jägermeister is unquestionably focused on selling alcohol, not clothing. Mast-Jägermeister's sale of promotional clothing does not overshadow this fact.

Finally, Alfwear maintains that the parties' markets overlap because they both sponsor and advertise at sporting events. Alfwear uses KÜHL to sponsor auto and cycling races, and Mast-Jägermeister has sponsored the National Basketball Association finals and National Hockey League Stanley Cup finals. See Opp'n App. Exs. 45, 46. But Alfwear provides no evidence that Mast-Jägermeister used the world KÜHL in connection with its NBA and NHL

sponsorships. And though these events can all be categorized as sports, they are different kinds of sporting events and likely attract different consumers.

There is little similarity between the parties' products and marketing channels. This factor weighs in favor of Mast-Jägermeister.

### 5. Degree of care exercised by purchasers.

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusing similar trade names." King of the Mountain Sports, 185 F.3d at 1092. Generally, consumers are more careful when purchasing more expensive products. See Icon Health & Fitness, Inc. v. Nautilus Grp., Inc., No. 1:02CV00109TC, 2004 WL 6031124, at *11 (D. Utah Dec. 21, 2004).

Alfwear's clothing is "probably the second-most-expensive brand in the outdoor industry. Maybe third." Opp'n App. Ex. 1 (Boyle Dep.) at 133:23–24. It is "high-end" and is "only found in high-end, great shops . . . and some of the best department stores." Id. at 22:8; 97:6–10. Alfwear acknowledges that it is not interested in selling to customers who do not exercise a high degree of care in making purchases: "We want people who want to buy great . . . [w]e don't make crap, and we don't want to sell to people who care about that." Id. at 47:18–48:10. Considering that customers choose to buy KÜHL clothing because of its high quality, they likely exercise a high degree of care when they purchase Alfwear's products. This factor favors Mast-Jägermeister.

### 6. The strength or weakness of the marks.

Courts evaluate two aspects of a senior mark's strength: conceptual strength—"the placement of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum"—and commercial strength—recognition by consumers in the marketplace. King of the Mountain

Sports, 185 F.3d at 1093. If the senior mark is conceptually and commercially strong, use of that mark by another can give rise to likelihood of confusion, even if the use occurs in connection with a totally distinct product. Id.

A mark's conceptual strength is evaluated based on its degree of distinctiveness. From strongest to weakest, the degrees of distinctiveness are: fanciful, arbitrary, suggestive, descriptive, and generic. Id. Fanciful marks are words that have been invented or created for the sole purpose of being used as a trademark, like Kodak or Exxon. First Sav. Bank, F.S.B. v. First Bank Sys., Inc., 101 F.3d 645, 655 (10th Cir. 1996). An arbitrary mark has "a common meaning unrelated to the product for which it has been assigned," such as Apple computers or Camel cigarettes. Id. Suggestive marks suggest, rather than describe, some quality or ingredient of the goods, while descriptive marks actually describe one or more of the product's characteristics or qualities. Water Pik, 726 F.3d at 1152–53 ("Suggestive terms are those which require the buyer to use thought, imagination, or perception to connect the mark with the goods, whereas descriptive terms are those which directly convey to the buyer the ingredients, qualities, or characteristics of the product.") (internal quotations omitted). Generic marks identify "only a general class of goods to which a specific product may belong." Id.

The parties profoundly disagree about the conceptual strength of Alfwear's KÜHL mark. Alfwear argues that it is fanciful because it is "not an English word and does not create an intrinsic relationship to Alfwear's products." Opp'n Br. at 84. Mast-Jägermeister contends that KÜHL is descriptive because it merely reflects "the cold weather in the outdoors where the clothing is worn" or "a positive characterization of its clothing products—i.e., that they are cool." Def.'s Reply Br. at 92.

14

KÜHL is at least suggestive on the conceptual strength spectrum. KÜHL vaguely suggests characteristics of Alfwear's clothes—that they are cool, as in hip and trendy, and that they should be worn in cold or chilly environments. KÜHL is not quite descriptive because it takes some imagination to reach a conclusion about the nature or quality of Alfwear's clothes. Because KÜHL is at least suggestive, it is conceptually strong, because marks, "[s]uggestive, fanciful, and arbitrary marks are considered inherently distinctive," unlike descriptive marks. Water Pik, 726 F.3d at 1152.

But KÜHL's conceptual strength is not enough to overcome its lack of commercial strength. A mark's commercial "strength" is tested by the "marketplace recognition of the value of the mark." King of the Mountain Sports, 185 F.3d at 1093. Relevant factors include: "direct evidence, such as consumer surveys or testimony from consumers," and evidence of "(1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." Water Pik, 726 F.3d at 1154.

In support of KÜHL's commercial strength, Alfwear points out that it has been using KÜHL in connection with its products for over 25 years. Its net sales from 2018 to 2020 exceeded $200 million, and it has spent "millions" in advertising. Opp'n Br. at 86.

According to the Tenth Circuit, "[e]vidence that [a party's] products had millions of users and that its products were sold through well-known retailers does not tell us whether the sales were stimulated by the mark." Water Pik, 726 F.3d at 1154–55. Similarly here, Alfwear's data about sales and marketing expenditures speaks little about whether the public perceives KÜHL to be connected to Alfwear's products.

15

Though KÜHL is conceptually strong, Alfwear cannot show sufficient commercial strength to tilt this factor in its favor.

To conclude, the likelihood of confusion factors weigh heavily in favor of Mast-Jägermeister. No reasonable juror could find a likelihood of confusion between the parties' marks. Because Alfwear's trademark infringement claim cannot advance, the court does not address Mast-Jägermeister's fair use defense.

## II.     Unfair Competition

Somewhat related to trademark infringement, Alfwear brings two unfair competition claims against Mast-Jägermeister: federal unfair competition under 15 U.S.C. § 1125(a) and common law unfair competition. Mast-Jägermeister moves for summary judgment on both.

Trademark infringement under federal law is a type of unfair competition. Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research, 527 F.3d 1045, 1050 (10th Cir. 2008). The two claims have virtually identical elements—a legal right to a mark and likelihood of confusion—and are usually addressed together. Alfwear's federal unfair competition claim directly mirrors its federal trademark infringement claim. Because Alfwear cannot show likelihood of confusion, there is no separate factual issue for trial in regard to federal unfair competition.

Alfwear also sues Mast-Jägermeister under common law, stating that Mast-Jägermeister's use of the word KÜHL causes "confusion by the public and constitutes common law unfair competition." Compl. at ¶ 39. Under Utah common law, "unfair competition includes—but is not limited to—passing off, palming off, imitating, and causing or likely causing confusion or deception." Overstock.com, Inc. v. SmartBargains, Inc., 192 P.3d 858, 862 (Utah 2008); see also Big Squid, Inc. v. Domo, Inc., No. 2:19-CV-193, 2019 WL 3555509, at *10 n.154 (D. Utah Aug.

16

5, 2019) (collecting Utah cases). As previously described, there is no genuine issue of fact about whether Mast-Jägermeister's use of KÜHL is likely to confuse consumers. Alfwear's common law claim depends on this confusion element. Consequently, it fails as a matter of law.

### III.    Dilution

Finally, Mast-Jägermeister moves for summary judgment on Alfwear's claim for dilution under 15 U.S.C. § 1125(c). In contrast to trademark infringement, dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services," regardless of competition between the owners of the marks or likelihood of confusion. 15 U.S.C. § 1127. To prevail on a claim for dilution, a plaintiff must show that it owns a "famous" mark, that its mark was famous before the defendant began using of the mark, and that the defendant's use has or will cause dilution. Id. § 1125(c)(1); see also Poison Spider Bicycles, Inc. v. TAP Mfg., LLC, No. 2:16-CV-00148, 2018 WL 836364, at *7 (D. Utah Feb. 12, 2018). Dilution means that defendant's use of the trademark will likely "blur" or "tarnish" the plaintiff's mark or harm its reputation. Id. § 1125(c)(2)(B)–(C).

A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Id. § 1125(c)(2)(A). In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, which are similar to those analyzed for commercial strength. They are: "the duration, extent, and geographic reach of advertising and publicity of the mark"; "the amount, volume, and geographic extent of sales of goods or services offered under the mark"; "the extent of actual recognition of the mark"; and whether the mark was registered. Id.

To support its contention that KÜHL is famous, Alfwear provides facts about its total sales, number of retail partners, and number of advertisements. See Opp'n Br. at 90–91. Alfwear emphasizes that "KÜHL is the fourth largest player in the industry after Patagonia, Columbia, and North Face" and the KÜHL mark has been used in connection with its clothing line since 1993. Id. at 89–90. It "sells to over 1,000 retailer partners with over 3,000 locations, through multiple channels of distribution …. It has well known distributors like REI, Scheels, and Eastern Mountain Sports, and has had millions of page views and extensive social media presence, including obviously Facebook, Instagram, Twitter, and YouTube." Id. at 90. Alfwear's advertisements are "likely appear on over 100,000 websites." Id. at 91. Alfwear also lists various celebrities and athletes who have worn KÜHL clothing, including the race car driver Dale Earnhardt Jr., and actors Harrison Ford and Matthew McConaughey.

But Alfwear does not put its statistics in context, and these facts alone do not necessarily illustrate wide recognition by the American public. "Raw numbers of product sales and advertising expenses may have sufficed in the past to prove fame of a mark, but raw numbers alone in today's world may be misleading." Bose Corp. v. QSC Audio Prod., Inc., 293 F.3d 1367, 1375 (Fed. Cir. 2002). Alfwear does not explain how its sales and advertising expenditures compare to other clothing companies, and a reasonable juror could not discern whether raw statistics like "over 1,000 retail partners" and "200 million in total sales from 2018–2020" actually indicate fame. Opp'n Br. at 90. Today, many people and entities have "millions of page views" and extensive online presences, but this does not necessarily mean they are widely recognized. Id. And just because some celebrities wore KÜHL clothing once does not demonstrate that KÜHL is a household name. See Poison Spider Bicycles, 2018 WL 836364 at 7.

18

Further, the 2006 amendments to 15 U.S.C. § 1225(c)(2)(A) require more than "niche market fame" to support that a mark is famous within the meaning of the trademark dilution statutes. See e.g. King of the Mtn. Sports, 968 F. Supp. at 578 (fame within the niche market of hunting apparel was insufficient for purposes of trademark dilution); Poison Spider Bicycles, 2018 WL 836364 at *7 (fame within the Southern Utah bicycling community was insufficient to establish fame).

Alfwear cannot show that KÜHL is famous outside of the niche outdoor apparel market. In his deposition, Alfwear's president and founder emphasized how Alfwear's branding strategy focuses, to some degree, on exclusion. "A brand is a club. A club isn't just who you allow in, but more importantly who you don't. . . [w]e don't want to sell to 80% of the people, because 80% of the people don't care. What they want is price. We don't want that customer." Opp'n App. Ex 1 (Boyle Dep.) at 23:3–4; 47:5–8. If Alfwear does not seek to sell its product to 80% of people, it is difficult to see how KÜHL is widely recognized by the general American public. At best, KÜHL is famous only within the niche outdoor clothing market.

Alfwear has not provided evidence that would allow a reasonable juror to find that its mark is famous. Its dilution claim fails at this stage.

## CONCLUSION

For the reasons described, Mast-Jägermeister has shown that there is no genuine dispute of fact for trial. Alfwear has not produced sufficient evidence for a reasonable juror to find the required elements of federal trademark infringement, dilution, or federal or common law unfair competition. Mast-Jägermeister's motion for summary judgment (ECF No. 127) is GRANTED.

DATED this 3rd day of February, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge