IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALFWEAR, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>MAST-JÄGERMEISTER US, INC.,<br><br>            Defendant. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:17-cv-00936-TC-DBP<br><br>District Judge Tena Campbell<br>Chief Magistrate Judge Dustin B. Pead |

      On September 17, 2021, Chief Magistrate Judge Dustin B. Pead denied a motion for attorneys' fees and costs filed by Defendant Mast-Jägermeister US, Inc. (ECF No. 283.) Mast-Jägermeister timely filed an objection to Judge Pead's order, (ECF No. 284), but it filed a notice of appeal two weeks later. (ECF No. 285.) Afterward, the Clerk of Court for the United States Court of Appeals for the Tenth Circuit issued an order abating the appeal pending this court's resolving the objection. (Order, <u>Alfwear, Inc. v. Mast-Jaegermeister US, Inc.</u>, No. 21-4123 (10th Cir. Nov. 2, 2021).) After learning of this Tenth Circuit order in December, the court ordered Alfwear to respond to Mast-Jägermeister's objection. (ECF No. 291.) Alfwear responded. (ECF No. 297.)

      After reviewing de novo the original materials, Judge Pead's order, Mast-Jägermeister's objection, and Alfwear's response, the court OVERRULES Mast-Jägermeister's objections and ADOPTS Judge Pead's order.

## STANDARD OF REVIEW

      Magistrate judges do not typically handle postjudgment motions. An "A" referral under 28 U.S.C. § 636(b)(1)(A) applies to nondispositive pretrial matters, while a "B" referral under

§ 636(b)(1)(B) applies to dispositive pretrial matters, but the magistrate judge must submit "proposed findings of fact and recommendations for the disposition" to the court. Although a motion for attorneys' fees is a postjudgment matter, the court can still refer it to a magistrate judge, but it must be considered a dispositive pretrial matter. Fed. R. Civ. P. 54(d)(2)(D). This means that the court must treat Judge Pead's order as a Report & Recommendation under a "B" referral and "make a de novo determination" of the portions of the order to which Mast-Jägermeister objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); see also Ins. Co. of N. Am. v. Bath, 968 F.2d 20, 1992 WL 113746, at *2 (10th Cir. 1992) (unpublished table decision); cf. Colo. Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co., 879 F.2d 809, 811 (10th Cir. 1989) (holding that postjudgment matters may be assigned to magistrate judges under the "inclusive provision" of 28 U.S.C. § 636(b)(3), subject to de novo review).

## ANALYSIS

Two expenses are at issue here: attorneys' fees and costs. The Lanham Act authorizes courts to "award reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). And Federal Rule of Civil Procedure 54(d)(1) creates a presumption that "costs—other than attorney's fees—should be allowed to the prevailing party." Judge Pead found that this was not an exceptional case, and he also found that none of Mast-Jägermeister's costs were recoverable. Mast-Jägermeister objects to both findings.

### I.     Attorneys' Fees

An exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). Unreasonable litigation conduct, even if not

"independently sanctionable," can justify a fee award. Id. at 555. But subjective bad faith is not required, nor must the claim have been "exceptionally meritless." Id. This is a "simple discretionary inquiry" and does not require the prevailing party to meet an elevated standard of proof. Id. at 557. Although Octane Fitness involved the Patent Act, its holding applies equally to the Lanham Act. Derma Pen, LLC v. 4EverYoung Ltd., 999 F.3d 1240, 1246 (10th Cir. 2021).

In considering the totality of the circumstances, courts may look to factors like "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). Additional factors can include "lack of foundation, the plaintiff's bad faith, and unusually vexatious and oppressive litigation practices." Derma Pen, 999 F.3d at 1246 (citing King v. PA Consulting Grp., Inc., 485 F.3d 577, 592 (10th Cir. 2007)).

Judge Pead examined the totality of the circumstances and concluded that the case was not exceptional because Alfwear did not engage in overly aggressive litigation tactics and because Alfwear had a meritorious claim. Mast-Jägermeister makes four primary objections in response. The court will answer these objections below.

First, Mast-Jägermeister argues that Judge Pead misconstrued the Trademark Trial and Appeal Board (TTAB) and Southern District of New York (SDNY) filings and ignored other "undisputed evidence" of Alfwear's "aggressive litigation tactics." Without endorsing either side's actions, the court agrees with Judge Pead: Both parties engaged in "hard-fought" tactics. (Order at 4–5, ECF No. 283.) Mast-Jägermeister admits that it struck the first blow outside of Utah when it filed four cancellation proceedings at the TTAB beginning in November 2018. (Mot. at 5, ECF No. 243.) Alfwear responded by obtaining a third-party assignment of a

trademark on "KÜHL" for wine and reapplying for a trademark on "KÜHL" for beer in June 2019, along with moving for a preliminary injunction in December 2019. Mast-Jägermeister took the fight to the Southern District of New York in January 2020, where it asked for declaratory relief against Alfwear's trademarks. The court enjoined both Mast-Jägermeister's New York action and Alfwear's trademark application. (ECF Nos. 99 & 122.) Mast-Jägermeister moved the TTAB to suspend its cancellation proceedings. (ECF No. 120-2.)

The breathless pace at which the court recounts these events leads to a single conclusion: This was a contentious case. Nowhere did the court single out either side's behavior as crossing the line, though in one order the court chided Mast-Jägermeister for forum shopping and for lodging accusations at Alfwear based on "insinuation." (Order at 4, ECF No. 99.) It strikes the court as somewhat disingenuous for Mast-Jägermeister to assert that "having launched the war, Alfwear is in no position to complain about the battles." (Reply at 19, ECF No. 276.) There is enough acrimony to go around. When considering the totality of the circumstances, Alfwear's litigation tactics are not enough to label this case "exceptional."

Second, Mast-Jägermeister contends that Judge Pead mischaracterized the court's order denying the earlier motion to dismiss. Mast-Jägermeister is partially correct; in denying the motion to dismiss, the court was primarily concerned with the factual nature of the confusion and source issues. (See Transcript of May 23, 2018 Hearing on Motion to Dismiss 38:21–39:6, ECF No. 262.) But if the case had been truly meritless from the outset, the court would have had no qualms about dismissing the case. So Judge Pead is also correct: The court's denial shows that the case was "sufficiently meritorious." (Order at 5, ECF No. 283.) This issue weighs in favor of Alfwear, though only slightly.

Third, Mast-Jägermeister argues that Judge Pead failed to consider whether Alfwear should have filed suit in the first place. The court notes that this issue was partially covered by Judge Pead's comment about the case being "sufficiently meritorious." According to Mast-Jägermeister, "Alfwear identified no right . . . to police trademark rights against non-competitors who cause no confusion or threaten a likelihood of confusion." (Obj. at 13–14, ECF No. 284.) This may well be true. But Alfwear believed that there was a likelihood of confusion between the parties' marks, and this belief was objectively reasonable. Alfwear may have lost on this issue at summary judgment, but losing is not the benchmark for awarding attorneys' fees. The court never identified any improper motive, objective unreasonableness, or bad faith. This was not a frivolous case.

Finally, Mast-Jägermeister complains that Judge Pead did not address two Ninth Circuit cases that affirmed findings of Lanham Act exceptionality. Love v. Associated Newspapers, Ltd., 611 F.3d 601 (9th Cir. 2010); Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., 668 F.3d 677 (9th Cir. 2012). Judge Pead, of course, was not required to respond to every case that the parties cited. In any event, these two cases are distinguishable.

In Love, the plaintiff had presented a "misleading and deceptive declaration," and he filed an affidavit that "'unreasonably and vexatiously . . . lengthened or multiplied' the work of the defendants and the district court." 611 F.3d at 615–16. The district court had also sanctioned the plaintiff's attorney. Id. at 616. None of that has happened here. In Secalt, the plaintiff had already been warned by a different district court that there was "'an utter failure' of proof" on its claim. 668 F.3d at 688. "[W]ere [the plaintiff] able to provide some legitimate evidence of nonfunctionality, this case would likely fall on the unexceptional side of the dividing line," the Ninth Circuit wrote. Id. Here, the court never found that there was an utter failure of proof. As

5

the court acknowledged in its summary judgment order, Alfwear provided some legitimate evidence of actual confusion—Dr. Michael Belch's expert report. (Order & Mem. Decision at 11, ECF No. 240.) This alone pushes the case to the "unexceptional side of the dividing line." Secalt, 668 F.3d at 688.[1] These cases do little to bolster Mast-Jägermeister's entitlement to fees, so Judge Pead did not err by not citing them.

Ultimately, the word "exceptional" must mean something. The court sees no reason that this case should fall outside the rule that "[e]ach litigant pays his own attorney's fees, win or lose." Peter v. Nantkwest, Inc., 140 S. Ct. 365, 370 (2019).

## II.     Costs

Mast-Jägermeister also asks for the following costs to be awarded: (1) attorneys' fees in the TTAB and SDNY actions; (2) expert witness fees and costs totaling $411,905.25, (3) a $6,000 payment made to Cross Media for advertising data, (4) a $22,789.90 payment made to KL Discovery for e-discovery services, (5) messenger costs of $3,865.88, (6) the TTAB filing fee of $4,100, and (7) travel expenses of $1,852.72. Because the Lanham Act only mentions awarding costs to a prevailing plaintiff, 15 U.S.C. § 1117(a), Mast-Jägermeister asks for its costs under the court's authority in Federal Rule of Civil Procedure 54(d)(1).

Rule 54 appears to be broad. But "the Supreme Court has placed strict limits on what can be awarded" under this rule. Stender v. Archstone-Smith Operating Tr., 958 F.3d 938, 941 (10th Cir. 2020). Specifically, Rule 54 is limited by 28 U.S.C. § 1920, which only allows courts to tax the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

---

[1] Moreover, Secalt predated Octane Fitness, and it has since been abrogated by SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179 (9th Cir. 2016) (overruling prior Lanham Act fee precedents that applied de novo review, holding instead that the appropriate standard is abuse of discretion).

6

    (3) Fees and disbursements for printing and witnesses;
    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5) Docket fees under section 1923 of this title;
    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

§ 1920; see Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445 (1987) (quoted in Stender, 958 F.3d at 942); Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 877 (2019). None of Mast-Jägermeister's costs fall into these categories. And as Judge Pead rightly concluded, because there was no fraud or bad faith, the court could not award expert fees under its inherent authority. See MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 921 (Fed. Cir. 2012). Mast-Jägermeister's objection does nothing to move the court away from Judge Pead's conclusion.

## CONCLUSION

Construing Judge Pead's order as a Report & Recommendation (R&R), the court OVERRULES Mast-Jägermeister's objections and ADOPTS Judge Pead's R&R.

DATED this 17th day of February, 2022.

                                          BY THE COURT:

                                          TENA CAMPBELL
                                          United States District Judge